RENDERED:  JANUARY 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1260-MR

JUSTIN S. WILSON                                                APPELLANT

APPEAL FROM PULASKI CIRCUIT COURT
v.      HONORABLE JEFFREY T. BURDETTE, JUDGE
ACTION NO. 20-CR-00080

COMMONWEALTH OF KENTUCKY                             APPELLEE

AND

NO. 2020-CA-1261-MR

GINGER ARD                                                    APPELLANT

APPEAL FROM PULASKI CIRCUIT COURT
v.      HONORABLE JEFFREY T. BURDETTE, JUDGE
ACTION NO. 18-CR-00704

COMMONWEALTH OF KENTUCKY                             APPELLEE

AND

NO. 2020-CA-1266-MR

RONIKA PAYTON                                                    APPELLANT


                        APPEAL FROM PULASKI CIRCUIT COURT
v.                   HONORABLE JEFFREY T. BURDETTE, JUDGE
                            ACTION NO. 18-CR-00151



COMMONWEALTH OF KENTUCKY                                          APPELLEE



                                    OPINION
        VACATING AND REMANDING APPEAL NOS. 2020-CA-1260-MR,
               2020-CA-1261-MR, AND 2020-CA-1266-MR

                            ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; KAREM AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Justin S. Wilson brings Appeal No. 2020-CA-1260-MR from

an order summarily denying his Motion to Vacate Conviction Pursuant to RCr

11.42 and CR 60.02; Ginger Ard brings Appeal No. 2020-CA-1261-MR from an

order summarily denying her Motion to Vacate Conviction Pursuant to RCr 11.42

and CR 60.02; Ronika Payton brings Appeal No. 2020-CA-1266-MR from an

order summarily denying her Amended Motion to Vacate Conviction Pursuant to

RCr 11.42 and CR 60.02.  All three orders were entered in the Pulaski Circuit

Court on September 2, 2020.  For the reasons stated, we vacate and remand Appeal

Nos. 2020-CA-1260-MR, 2020-CA-1261-MR, and 2020-CA-1266-MR.

These appeals (Appeal Nos. 2020-CA-1260-MR, 2020-CA-1261-MR, and 2020-CA-1266-MR) emanate from related underlying factual situations. Between February 2018 and January 2020, Wilson, Ard, and Payton (collectively referred to as appellants) were arrested and charged with multiple felonies by Constable Michael Wallace and Constable Gary Baldock of Pulaski County, Kentucky. After their arrest, each appellant reached a plea agreement with the Commonwealth and subsequently entered a guilty plea.[1] By separate judgments entered in the circuit court, appellants were sentenced to punishments ranging from pretrial diversion to twenty-years' imprisonment.

All three appellants subsequently filed a Motion to Vacate Conviction Pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 and Kentucky Rules of Civil Procedure (CR) 60.02[2] (collectively referred to as Motions to Vacate). In their Motions to Vacate, appellants alleged that Constable Wallace and Constable Baldock engaged in various illegal activities related to their official

---

[1] The offenses that each appellant pleaded guilty to are as follows: (1) Justin S. Wilson - Trafficking in a Controlled Substance, First Degree (Methamphetamine), Possession of a Controlled Substance, First Degree (Heroin); (2) Ginger Ard – Possession of Controlled Substance, First Degree (Methamphetamine); and (3) Ronika Payton – three counts of Trafficking in a Controlled Substance, First Degree (Methamphetamine), two counts of Trafficking in a Controlled Substance (Heroin), and two counts of Possession of a Firearm by a Convicted Felon.

[2] The Motions to Vacate Pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 and Kentucky Rules of Civil Procedure (CR) 60.02 filed on behalf of Justin S. Wilson and Ginger Ard were essentially identical. The motion filed by Ronika Payton was entitled Amended Motion to Vacate Conviction Pursuant to RCr 11.42 and CR 60.02. The only notable difference was that the amended motion added the alleged facts relevant to Payton's appeal.

duties that ultimately resulted in the Constables' arrests by the Federal Bureau of Investigation (FBI) and their subsequent indictments in federal court. In fact, each appellant alleged that Constable Wallace and Constable Baldock engaged in a pattern of planting illegal drugs and/or weapons upon appellants and then improperly coerced and intimidated appellants to enter guilty pleas. In particular, appellants alleged in their Motions to Vacate that Constable Wallace and Constable Baldock:

> [R]outinely violated individuals state and federal Civil and Constitutional Rights by searching persons, homes and vehicles without probable cause; Planting drugs and weapons. Always charging the individuals with . . . trafficking offenses rather than mere possession; planting firearms; threatening to prosecute family members of individuals that would not enter Guilty Pleas once the matter made its way into the Court System; and flat out stealing cash and personal items from their victims.

Motion to Vacate Conviction at 5.

Appellants additionally maintained, in their Motions to Vacate, that the FBI had received numerous complaints regarding illegal activities of Constable Wallace and Constable Baldock. As a result, on September 24, 2019, appellants maintain that an undercover FBI agent left an anonymous tip on Constable Wallace's drug tip line. In the tip, the undercover officer apparently described the vehicle he was in, gave the location of the vehicle, and made an allegation that the driver of the vehicle was possibly a drug trafficker. According to appellants, the

-4-

following events allegedly occurred immediately after the agent's call to the tip line:

> Constable Wallace did not take long to arrive and approach the undercover vehicle which was sitting in the parking lot of the Somerset Mall. Upon approaching Constable Wallace immediately removed the undercover agent from his vehicle. (Civil Rights Violation 1). The undercover agent was then searched and handcuffed. (Civil Rights Violation[s] 2 and 3). Constable Wallace circled the vehicle with his K-9 and then claimed the dog "hit" on the driver's door. The dog, however, simply circled the vehicle according to aerial surveillance. Constable Wallace then contacted Deputy Travis Bell of the Wayne County Sheriff's Office and asked that Bell's K-9-unit travel from Wayne County to Somerset Mall so Bell's K-9 could sniff the undercover's vehicle. While waiting on Deputy Bell's arrival, Constable Wallace put his K-9 inside of the vehicle. (Civil Rights Violation 4). Deputy Bell arrived and ran his dog around the vehicle. When interviewed after the fact Deputy Bell confirmed that his dog did not "hit" and that based upon his dog's behavior he would not have searched the vehicle. Constable Wallace also contacted Burnside Police Officer Eric Thomas and requested he conduct a field sobriety test on the agent. It was very common for the Constables to involve legitimate law enforcement officers in their illegal activities and conspiracy in hopes to hide their illegal deeds and to bolster their case if it went to Court. Officer Thomas arrived at the scene and conducted a field sobriety test on the undercover agent. Officer Thomas informed both Constables that he found no indication of intoxication. Instead of releasing the undercover agent and apologizing for violating his civil rights Wallace and Baldock searched the vehicle and seized a Red Roof Inn room key and cash. (Civil Rights Violations 5, 6 and 7). At no point did Constables Wallace or Baldock perform any field sobriety test themselves on the undercover agent. Although no drugs

were located on the undercover agent's person or vehicle, and no other violations were evident, the agent was then transported by the Constables to the Red Roof Inn. Constable Wallace obtained a Search Warrant for the hotel room belonging to the room key located in the undercover agent's vehicle. (Civil Rights Violation 8).

The Search Warrant Affidavit provided under Penalty of Perjury to the Court to obtain a Search Warrant for the Red Roof Inn hotel room contained what we now know to be information clearly inconsistent and contradictory to the reality of what happened at the scene. The Search Warrant Affidavit states that Constable Wallace was given the hotel room number by the informant who provided the tip – **FALSE**. It also stated that he observed a vehicle approach the agent's car, and then quickly leave following a short meeting – **FALSE**. In addition, Wallace provided in the Affidavit that he observed a change in the agent's behavior during questioning – **FALSE**. We now know due to the Federal Indictments of the Constables that the undercover agent had been immediately removed from the vehicle with NO questioning. (Civil Rights Violations 9, 10 and 11).

Once a Search Warrant was issued by the Court for the room to which the key belonged based upon Constable Wallace's perjury, Wallace and Baldock then entered the undercover agent's hotel room where both the agent and the room itself were searched thoroughly. (Civil Rights Violation[s] 12 and 13). No drugs, weapons, or any other illegal item was located on the agent's person or inside the hotel room. Constables Wallace and Baldock then attempted to intimidate the undercover agent with a long prison sentence if he did not reveal the location of drugs. (Civil Rights Violation 14). Throughout the encounter, the agent repeatedly denied being involved with controlled substances. When no drugs were located and the agent had continually denied any drug involvement, Constable Baldock contacted Officer Thomas and asked what a Uniform

Citation should say if someone were to be properly arrested for Public Intoxication. Constable Baldock then wrote a Uniform Citation for Public Intoxication consistent with the advice he was given and Wallace signed the Citation. (Civil Rights Violation 15). The undercover agent [was] then transported to the Pulaski County Detention Center (PCDC) and lodged in custody of the jail. The agent's vehicle and cash were seized by the Constables. (Civil Rights Violation[s] 16 and 17). Following the undercover agent's arrest, the FBI quickly arranged for the agent's release from custody. Constable Wallace was contacted by a Deputy Jailor of PCDC who proceeded to inform Wallace that the individual he had just lodged in jail had walked out and into an awaiting black vehicle. It is presumed that the Judge who ordered the release of the FBI agent at the FBI's request was former Pulaski Circuit Court Judge, Honorable David A. Tapp. Following the FBI sting and release of the undercover agent, Judge Tapp recused himself from all Criminal matters before him which involved Constable Mike Wallace.

Motion to Vacate Conviction at 7-9.

Appellants also maintained, in their Motions to Vacate, that the FBI ultimately obtained warrants of arrest for Constable Wallace and Constable Baldock. Appellants assert that due to the FBI's knowledge that the Constables were armed, had exhibited a brazen disregard for the law, and lacked any written policies or chain of command, the FBI planned to arrest Constable Wallace and Constable Baldock during the early morning hours with the use of an FBI SWAT team.

In appellants' Motions to Vacate, it was further noted that on March 6, 2020, the FBI and other law enforcement arrived at Constable Baldock's home with their vehicle's emergency lights activated. Using a loud speaker, the FBI apparently announced their presence, stated they had a warrant for Baldock's arrest, and ordered Baldock to come outside of the house; Baldock never responded. The FBI SWAT team allegedly breached the front and back door of the residence but did not enter. An agent apparently observed an individual, later identified as Constable Baldock, behind a wall in a defensive posture and holding a handgun. Appellants' alleged that Baldock was ordered to drop his weapon but instead brandished his weapon before firing upon the FBI agents. The FBI then returned fire, and Baldock again fired his weapon striking an FBI agent.

In their Motions to Vacate, appellants further asserted that the FBI sent a robot with a camera into the house and observed Baldock, still in an aggressive posture, with the handgun. Baldock, who was bleeding from his chest, was apparently convinced to come to the front door and was transported to the hospital. Appellants also maintained that despite Baldock giving a statement to the FBI that he had never taken drug evidence into his custody, methamphetamine and scales were found in his vehicle.

In all three cases, the circuit court denied the Motions to Vacate without an evidentiary hearing by orders entered September 2, 2020. The circuit

court reasoned that appellants' guilty pleas were voluntarily entered based upon its review of the guilty plea colloquy of each appellant. These appeals follow.

To resolve these appeals, we shall initially set forth the alleged underlying facts asserted by each appellant.

## FACTS

### Justin Wilson

The underlying facts relevant to Wilson were alleged in his Motion to Vacate as follows:

> On January 31, 2020, Mr. Justin Wilson was at his home on Pond Meadow Road, Somerset, Kentucky, when he heard a loud knock on his door around midnight. Constable Wallace and Constable Baldock were at his home to execute a Search Warrant. Both Wallace and Baldock searched his home where they allegedly found heroin, crystal meth, and digital scales according to the Uniform Citation that Wallace later issued. According to Wallace and Baldock, Mr. Wilson tried to run out of the home and failed to listen to commands. They also alleged Mr. Wilson resisted 45 minutes later when he was actually taken into custody. Wallace and Baldock alleged that over 14 grams of Methamphetamine were located in Mr. Wilson's home, over 3 grams of Heroin, 2 sets of digital scales, 3 unidentified orange pills, and $140 in cash. Mr. Wilson was charged with one count of Trafficking in a Controlled Substance for the alleged Heroin; one count of Trafficking in a Controlled Substance for the alleged Methamphetamine; one count of Fleeing and Evading, 2nd Degree (on foot); and one count of Resisting Arrest. He was lodged in the Pulaski County Detention Center.

Mr. Wilson asserts that he had *no* Heroin in his home, he did not flee or resist arrest, and that Wallace and Baldock illegally seized $1,900 in cash, although all records show only the $140 was reported and/or logged into evidence. Although he reports he did possess a small amount of Methamphetamine for his personal use, he had no where near the amount alleged by Wallace and Baldock. Pressure was placed on Mr. Wilson to accept a "Rocket Docket" offer which consisted of pleading guilty to amended charges of Trafficking in Methamphetamine, 1st Degree, less than 2 grams; and Possession of a Controlled Substance, 1st Degree, Heroin. All other charges would be dismissed. On or about the 20th of February 2020, Mr. Wilson entered into the "Rocket Docket" plea and agreed to forfeiture of items seized, specifically the $140 in cash. He is now wrongfully serving a 5-year prison sentence and has not received the stolen $760 in cash which was pocketed by Constable Wallace and Constable Baldock. Mr. Wilson has retained the undersigned to file post-conviction motions [in an] attempt to retrieve his stolen money. Mr. Wilson's guilty plea was not made voluntarily and the Court should allow him to withdraw his guilty plea and proceed to a jury trial.

June 23, 2020, Motion to Vacate at 48-49.

### *Ginger Ard*

Ard alleged the relevant underlying facts regarding her encounter with

Constables Wallace and Baldock in her Motion to Vacate:

On October 25, 2018, Ms. Ard was home in her camper located off W Hwy 80, Nancy, Kentucky. A little after midnight, she heard a loud knock on her door. She opened it to find Constable Wallace and Constable Baldock. Wallace immediately began threatening her that he was going to take her to jail. She was alone and scared so when Wallace, along with Baldock as his

witness, asked to come in, she allowed it. They continuously asked her where the drugs and money were located in the camper. Wallace also told her that he had arrested her boyfriend, James Abbott, the day before. Wallace proceeded to search the camper and after a period of time, "found" a green box sitting on the kitchen table area of the small camper. Ms. Ard immediately denied that the box belonged to her and maintains to this day that she had never seen it prior to Wallace and Baldock searching her camper. Wallace insisted she was lying about the box. He took the mysterious green box into custody, as well as a shotgun which was registered to Ms. Ard's son. It should be noted that the shotgun was never logged into evidence and is missing to this day. Wallace left the camper with Ms. Ard in custody, charging her with one count of trafficking in methamphetamine, 1st Degree, 1st Offense, less than 2 grams. Ms. Ard was almost immediately offered a "Rocket Docket" deal just 2 weeks after her arrest by Wallace. The offer consisted of a Pre-Trial Diversion for 2 years and on advice of Appointed Counsel, Ms. Ard states that she waived her right to a Preliminary Hearing before the District Court, waived Indictment by the Grand Jury, and entered her "Rocket Docket" Plea on November 8, 2018[,] by the Court. She was sentenced to Pre-Trial Diversion upon entry of her plea on the November 8th court date.

Unfortunately for Ms. Ard, during the pendency of her Pre-Trial Diversion (PTD), she has been accused of violating the terms. On September 13, 2019, an Arrest Warrant was issued for an alleged violation. No bail was set upon issuance of the Warrant and the Court noted that the Defendant was not allowed to post a bond once arrested for the alleged violation. The revocation of her PTD was set for October 2019 and she was referred for evaluation to see if she qualified for drug court. Although it was initially determined that Ms. Ard was not eligible for drug court in October, in November of 2019, she was permitted to participate [in] drug court

rather than go to jail. Her agreement to participate in the drug court program added an additional amount of time of strict supervision on to her original Pre-Trial Diversion time period. The undersigned makes no arguments that drug court is not a life-changing experience for addicts that want to receive the help they need. However, Ms. Ard maintains that she is not an addict, and now faces years of strict supervision and future revocation motions, all of which began by an illegal search and arrest by Wallace and Baldock.

Ms. Ard would not be in the system at all if not for Wallace and Baldock's false statements and planted evidence in her camper. While Ms. Ard must allow the government to watch her every move for years to come, Constable Wallace is allowed to enjoy a pre-trial release from the Federal Court. Ms. Ard deserves justice and peace from intrusion by the government into her life due to her Constitutional Rights being violated in numerous ways by both Wallace and Baldock. The Court should be made aware of the truth of the original underlying charges so that Ms. Ard can finally receive finality and justice. She would also like to have her son's shotgun returned to her (registered in her son's name), which to the best of the undersigned's knowledge, continues to be in the possession of Constable Wallace and/or Constable Baldock.

June 17, 2020, Motion to Vacate at 47-49.

### *Ronika Payton*

Payton alleged the following underlying facts as to her experience

with Constables Wallace and Baldock in her Motion to Vacate:

On February 10, 2018, Ms. Payton was a guest in a room at the Red Roof Inn located in Somerset, Kentucky. While in the room, someone knocked loudly on the door and announced "housekeeping". [sic] Ms. Payton did not

-12-

open the door. Then another knock on the door was heard along with a voice which announced himself as "Law Enforcement" along with an order to open the door. Thereafter, without consent, Constable Wallace entered the hotel room and proceeded to search it. By the time all was said and done, Wallace had arrested everyone in the hotel room. Ms. Payton was charged by Constable Wallace with multiple gun and drug offenses. Ms. Payton strongly asserts that she was not trafficking drugs, nor did she have possession of any weapons, including any firearms. Ms. Payton believes that Constable Wallace planted the evidence against her and threatened her that he would be taking the charges to Federal Court where the penalty would be much greater if she did not plead guilty to her charges. Ms. Payton reluctantly entered into a "Rocket Docket" deal and was sentenced to 20 years in prison.

June 30, 2020, Amended Motion to Vacate at 48-49.

## ANALYSIS

Appellants assert that the circuit court committed reversible error by denying their Motions to Vacate pursuant to RCr 11.42 and CR 60.02. Appellants essentially claim that drugs and/or weapons were planted by Constable Wallace and/or Constable Baldock and that appellants ultimately entered guilty pleas to offenses that they did not commit. Appellants emphasized that they entered the guilty pleas due to the coercion and intimidation exerted by Constable Wallace and Constable Baldock.

It is self-evident that the criminal conviction of an innocent person offends both social norms of justice and the laws embodied in our Constitution. In

a society whose foundations were built upon the guarantee of justice for every citizen, the conviction of an innocent person represents a serious and egregious violation of such guarantee. When a person previously convicted of a crime by a jury trial or by a guilty plea can demonstrate actual innocence, it is constitutionally incumbent upon the state to provide a postconviction procedure to attack that judgment.[3]

In Kentucky, the proper postconviction procedure to demonstrate actual innocence is found in CR 60.02. We recognize that all three appellants entered guilty pleas and did not proceed to a jury trial. For this reason, the circuit court believed appellants were without a postconviction remedy. However, considering the constitutional implications involved in a claim of actual innocence, a postconviction procedure must be available through the courts in this Commonwealth. Under the particular circumstances of these appeals, we believe CR 60.02(f) provides the most appropriate avenue of relief.

In all three cases, appellants alleged that drugs and/or weapons were planted by Constable Wallace and Constable Baldock before appellants' arrests and that they were actually innocent of the charges related thereto. More particularly, Wilson maintains that he did not possess any amount of heroin and

---

[3] The conviction of an innocent person arguably violates the Eighth Amendment, Fifth Amendment, and Fourteenth Amendment of the United States Constitution and Section Two and Seventeen of the Kentucky Constitution.

was actually innocent of the offense of Possession of a Controlled Substance, First Degree (Heroin).  Wilson also maintains that he possessed a much smaller amount of methamphetamine (for personal use) than was reportedly seized, and thus, he was actually innocent of Trafficking in a Controlled Substance, First Degree (Methamphetamine).

As to Ard, she pleaded guilty to the offense of Possession of a Controlled Substance, First Degree (Methamphetamine), although she asserts that she did not possess any methamphetamine.  Thus, Ard argues that she is actually innocent of Possession of a Controlled Substance, First Degree (Methamphetamine).

Payton claims that she was not trafficking in illegal drugs.  Although Payton pleaded guilty to three counts of Trafficking in a Controlled Substance, First Degree (Methamphetamine), and two counts of Trafficking in a Controlled Substance, First Degree (Heroin), Payton claims she is actually innocent of all these drug trafficking offenses.  Payton further alleges she did not possess any weapons although she pleaded guilty to two counts of Possession of a Handgun by a Convicted Felon.  Therefore, Payton also claims actual innocence to the possession of a firearm charge.

Each of the three appellants has alleged that Constable Wallace and/or Constable Baldock planted weapons and/or drugs that ultimately led to their guilty

pleas as stated above. As previously set forth, Constable Wallace and Constable Baldock were arrested by the FBI and indicted for wrongful conduct related to their duties as constables. This conduct allegedly involved Constable Wallace and/or Constable Baldock planting drugs and/or weapons on criminal defendants.

Considering the record as a whole, we are simply unable to conclude that appellants' claims of actual innocence were refuted upon the face of the record and believe the circuit court erred by summarily denying appellants' Motion to Vacate under CR 60.02(f). Without an evidentiary hearing, appellants are effectively denied due process of law as well as their respective liberty. Thus, we vacate the circuit court's September 2, 2020, orders denying these Motions to Vacate and remand for the circuit court to conduct evidentiary hearings upon each motion to vacate. To prevail upon their claims of actual innocence under CR 60.02(f), appellants must demonstrate that Constable Wallace and/or Constable Baldock, in fact, planted drugs and/or weapons that resulted in appellants' guilty pleas to specific offenses for which they allege their innocence.

We view any remaining contentions of error to be moot or without merit.

For the foregoing reasons, we vacate and remand for an evidentiary hearing in Appeal Nos. 2020-CA-1260-MR, 2020-CA-1261-MR, and 2020-CA-1266-MR.

ALL CONCUR.

BRIEFS FOR APPELLANT
JUSTIN S. WILSON:

Gregory A. Ousley
Somerset, Kentucky

BRIEFS FOR APPELLANT
GINGER ARD:

Gregory A. Ousley
Somerset, Kentucky

BRIEFS FOR APPELLANT
RONIKA PAYTON:

Gregory A. Ousley
Somerset, Kentucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General
Frankfort, Kentucky